IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OGEECHEE RIVERKEEPER,<br><br>785 King George Blvd, Ste. 102<br>Savannah, GA 31419<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE,<br><br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>    Defendant. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This is a civil action under the Freedom of Information Act ("FOIA") in which Plaintiff Ogeechee Riverkeeper ("Riverkeeper") challenges the unlawful failure by Defendant United States Department of Defense and its components ("DOD") to timely respond to Riverkeeper's request for public records.

2. In June 2023, Riverkeeper requested records pursuant to FOIA from DOD regarding per- and polyfluoroalkyl substances ("PFAS") testing and contamination at Fort Stewart and Hunter Army Airfield in Georgia.

3. Based on DOD policies directing the investigation and remediation of PFAS contamination and publication of reports on PFAS at Fort Stewart and Hunter Army Airfield, Riverkeeper has substantial reasons to believe that DOD collected samples, conducted tests,

1

interviewed personnel, surveyed sites, performed analyses, and otherwise investigated, documented, and addressed the issue of PFAS at Fort Stewart and Hunter Army Airfield.

4. DOD has failed to comply with the statutory requirement under FOIA to make a timely determination in response to Riverkeeper's request. Despite repeated inquiries, reminders, and attempts to resolve this matter without litigation, Riverkeeper has not received a sufficient determination or responsive records from DOD.[1] Riverkeeper therefore seeks declaratory and injunctive relief from this Court as provided for under FOIA.

5. DOD has referred, routed, re-routed, and failed to route Riverkeeper's request between at least four different component offices. Those component offices have provided updates and information that has often been delayed, confusing, and inconsistent.

6. DOD has produced only a link to and copy of a report that was already publicly available on an Army website, while documents that are clearly relevant and referred to in that report have not been produced.

7. As of January 2025, more than a year and a half after submitting its request, Riverkeeper still awaits the required determination and production of responsive documents. As of the last update in December 2024, Riverkeeper's request sits in a long queue for one component office. Another component office did not receive a purported referral until Riverkeeper followed up more than a year later and has since closed and re-routed the request. Yet another component office has asserted that a referred and re-referred request is actually a wholly new request and placed it in a queue of unknown length.

---

[1] Just one file has been provided in response to Riverkeeper's FOIA request, a July 2022 Report which was and is publicly available on a U.S. Army Environmental Command webpage. That report referenced other clearly relevant documents, which were not produced.

8. At this time, Riverkeeper has exhausted all reasonable options to follow up, clarify, or assist in the processing of its request. Even if DOD had claimed deadline extensions for unusual circumstances (it did not), those extended deadlines would have passed. Even if a re-routed request constitutes a new request with a new deadline for response, that new deadline has passed as well.

9. DOD has not responded to Riverkeeper with the required determination in a timely manner. DOD has not provided information on the scope of documents to be produced, nor has it provided reasons or legal exemptions for withholding documents, nor has it provided the required appeals information, nor has it provided an estimated timeframe for processing Riverkeeper's request.

## JURISDICTION & VENUE

10. This Court has jurisdiction over this action under FOIA as the federal district court of the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court has federal question jurisdiction over this action, which arises under FOIA, a federal statute. 28 U.S.C. § 1331. This Court has jurisdiction to issue declaratory judgement and further necessary or proper relief. 28 U.S.C. §§ 2201, 2202.

11. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Riverkeeper is "deemed to have exhausted [its] administrative remedies" because DOD has "fail[ed] to comply with the applicable time limit provisions" of FOIA.

12. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) which states that "the district court of the United States in the… District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." This Court held that "through the provision now

codified at 5 U.S.C. § 552(a)(4)(B), Congress made this district a proper forum for venue purposes." *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 359 (D.D.C. 2012).

## PARTIES

### Plaintiff Ogeechee Riverkeeper

13. Plaintiff Ogeechee Riverkeeper is a 501(c)(3), nonprofit public interest environmental organization based in Savannah, Georgia with a mission to monitor, protect, and improve water quality in the Ogeechee River and Canoochee River watersheds.

14. Riverkeeper is a "person" for purposes of FOIA. 5 U.S.C. § 551(2). Riverkeeper maintains its office at 785 King George Blvd, Ste. 102, Savannah, GA 31419 and mailing address at P.O. Box 16206, Savannah, GA 31416.

15. Riverkeeper uses public outreach, education, and advocacy to protect water quality in the Ogeechee and Canoochee River watersheds. As part of this work, Riverkeeper frequently uses FOIA requests to gather, analyze, and disseminate public information through its website, as well as press releases, media interviews, reports, social media, and public comment letters. Riverkeeper staff also regularly attend and speak at public meetings and hearings throughout Georgia, informed by public information and sharing their analysis of the same.

16. Riverkeeper has submitted public comments on issues regarding water quality and pollutant contamination. Riverkeeper has met with federal agencies and legislators to advocate for clean-up of PFAS contamination and for implementing drinking water standards for PFAS. Riverkeeper has also disseminated information on PFAS contamination and risks in the Ogeechee River watershed, including contamination of fish tissue, groundwater, and surface water. Riverkeeper has taken note that military installations in Georgia may have substantial

PFAS contamination that could affect military personnel and nearby communities. Without access to the requested records, Riverkeeper is hampered in its efforts to effectively advocate on behalf of itself and communities in the Ogeechee River watershed who may be at risk from PFAS contamination on, or migrating from, Fort Stewart and Hunter Army Airfield.

**Defendant Department of Defense**

17. Defendant Department of Defense is an agency of the United States created by and existing pursuant to the National Security Act of 1947. *See* 50 U.S.C. § 3001 *et seq*.

18. DOD includes component agencies the Department of the Army ("the Army") and the Defense Health Agency ("DHA"). 50 U.S.C. § 3002.

19. DOD is an "agency" within the definition provided by FOIA. *See* 5 U.S.C. § 551(1).

20. DOD maintains its headquarters at 1000 Defense Pentagon, Washington, DC 20301-1000. DOD maintains and operates Fort Stewart at General Stewart Way, Fort Stewart, GA 31314 and Hunter Army Airfield at 685 Wilson Blvd, Savannah, GA 31409.

21. DOD has possession or control of the public records at issue in this case.

**LEGAL BACKGROUND**

**Freedom of Information Act**

22. "The FOIA was enacted to ensure public access to a wide range of government reports and information." *Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 76 (D.C. Cir. 1974). The "basic purpose [of FOIA] reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting S.Rep.No.813, 89th Cong., 1st Sess., 3 (1965)).

23. FOIA requires federal agencies to make records available "promptly" upon request. 5 U.S.C. § 552(a)(3)(A). Agencies must determine whether to comply with a FOIA request within 20 working days of receiving the request, and they must "immediately notify the requester of that determination." 5 U.S.C. § 552(a)(6)(A).

24. A timely "determination" involves more than merely acknowledging receipt of the request and stating that the agency will produce any non-exempt records that it may later locate. *Citizens for Resp. & Ethics in Wash. ("CREW") v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

25. To make a valid "determination" under FOIA, the agency must: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188.

26. An agency may extend the deadline for responding to a records request by up to 10 working days if "unusual circumstances" apply and it provides timely written notice to the requester. 5 U.S.C. § 552(a)(6)(B).

27. "Unusual circumstances" include the need to search for records from facilities that are separate from the office processing the request, the need to examine a large volume of records, or the need to consult with another agency or with two or more components of an agency with an interest in the subject matter of the request. An extension of the deadline by more than ten working days requires the processing agency to give the requester written notice and an opportunity to limit the scope of the request or arrange for an alternative time frame for processing the request. 5 U.S.C. § 552(a)(6)(B).

28. An agency is required to provide a tracking number for each request that will take longer than ten days to process, and to provide a phone number or internet service that provides information on the status of the request, including the estimated date on which the agency will complete action on the request. 5 U.S.C. § 552(a)(7).

29. In order to meet its obligations under FOIA, an agency "must conduct a comprehensive search tailored to the request and release any responsive material not protected by one of FOIA's enumerated exemptions." *Tushnet v. U.S. Immigration & Customs Enf't*, 246 F.Supp.3d 422, 430 (D.D.C. 2017). To meet that standard, an agency must show that its search was "reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

## DOD FOIA Regulations

30. DOD components will ordinarily respond to requests on a first-in/first out basis according to their order of receipt. 32 C.F.R. § 268.8(a).

31. DOD components are permitted to manage a multitrack system for processing FOIA requests, under which the component agency may expedite certain requests and distinguish between simple and complex requests. 32 C.F.R. § 286.8(b).

32. DOD components that receive a misdirected FOIA request are required to route such a request to the appropriate DOD component, inform that component of the date the original request was received, and advise the requester of the routing. 32 C.F.R. § 286.8(c).

33. If a DOD component cannot meet the statutory time limit for processing a request because of "unusual circumstances" (as defined under FOIA, see 5 U.S.C. § 552 (a)(6)(B)), the "[c]omponent must, before expiration of the 20-day period to respond, notify the requester in

7

writing of the unusual circumstances involved and of the date by which processing of the request can be expected to be completed." 32 C.F.R. § 286.8(c).

## FACTUAL BACKGROUND

34. DOD has operated Fort Stewart and Hunter Army Airfield since World War Two. These two facilities have been used as weapons ranges, flight training centers, and hubs for a wide array of activity, equipment, and personnel. DOD has used, stored, and disposed of materials that contain PFAS at both of these facilities. In particular, substantial amounts of fire-suppressing foam containing PFAS have been used and stored at both installations.

35. In June 2016, the Department of the Army (specifically, the Assistant Secretary of the Army, Installations, Energy and Environment) issued a memorandum titled "Perfluorinated Compound (PFC) Contamination Assessment" that directed the Army to conduct sampling, analysis, and clean-up of perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA") on Army installations.

36. In January 2021, the Army issued a memorandum with the subject "Army Environmental Per- and Polyfluoroalkyl Substances (PFAS) Policy" that superseded and cancelled the June 2016 memorandum and provided updated direction to the Army regarding sampling, analysis, and clean-up of PFAS on Army installations and off-installation sites.

37. In July 2022, a consultant provided two reports to DOD component Army Corps of Engineers, both titled "Final Preliminary Assessment and Site Inspection of Per- and Polyfluoroakyl Substances," for each of Fort Stewart and Hunter Army Airfield. These reports were based on review of records, personnel interviews, site visits, sample collection, and data analysis. The website on which these reports were published stated that appendices to the reports were available upon request. According to references in the reports, those appendices

include lists of reviewed documents, interview transcripts, storage records, site inspection notes, and soil and water test results.

38. The aforementioned memoranda and reports show that DOD collected samples, conducted tests, interviewed personnel, surveyed sites, performed analyses, and otherwise investigated, documented, and addressed the issue of PFAS at Fort Stewart and Hunter Army Airfield.

39. On June 5, 2023, Riverkeeper submitted a FOIA request to the U.S. Army Freedom of Information Act Office ("Army FOIA Office") via email for all records related to PFAS contamination and testing at Fort Stewart and Hunter Army Airfield.

40. On June 15, 2023, Riverkeeper sent an email to the Army FOIA Office to confirm that the FOIA request had been received. Also on June 15, 2023, the Army FOIA Office sent an email reply to Riverkeeper stating that the office had no record of having received a FOIA request from Riverkeeper on June 5, 2023, and providing an email address for submission of FOIA requests.

41. On July 24, 2023, the Army FOIA Office sent an email to Riverkeeper stating that the FOIA request re-submission was received and that the Army FOIA Office would refer the request to the appropriate office or agency.

42. On July 24, 2023, the Army FOIA Office provided a letter to Riverkeeper assigning tracking number FA-23-1992 / FP-23-022843 to the FOIA request and referring such request to the Fort Stewart/Hunter Army Airfield Garrison.

43. On July 27, 2023, the Fort Stewart FOIA Office sent a letter to Riverkeeper acknowledging receipt of the referral of the FOIA request dated June 5, 2023, from the Army FOIA Office, and assigning a FOIA Case Number FP-23-023189 / FA-23-0072.

44. On August 10, 2023, the Fort Stewart FOIA Office sent a letter to Riverkeeper in response to the FOIA request. This letter contained an acknowledgement that the Fort Stewart Directorate of Public Works found that records responsive to Riverkeeper's request do exist. However, the letter noted that the requested records fall under the denial authority of the U.S. Army Public Health Center and U.S. Army Environmental Command ("USAEC"). The letter stated that production of such records would require those offices to make a release determination. The letter also included attached FOIA referral memoranda sent from the Fort Stewart FOIA Office to USAEC and U.S. Army Public Health Center, respectively.

45. On August 30, 2023, the Defense Health Agency (DHA)[2] FOIA Office sent a letter to Riverkeeper in response to the FOIA Request dated June 5, 2023, indicating that DHA had received a referral of Riverkeeper's FOIA Request (referral received August 21, 2023). The letter assigned the tracking number 23-00610. The letter stated that it served as an "interim response" to Riverkeeper's FOIA request and that the DHA was "unable to respond to the request within FOIA's 20-day statutory time period due to a high volume of requests, limited resources, and the need to search for and collect records from a facility geographically separated from this office." The letter also noted that Riverkeeper's request had been logged into DHA's complex queue, in accordance with 32 C.F.R. § 286.8(a). The letter further stated that "all fees will be waived for this request because [DHA is] unable to meet the 20-day statutory time limit." DHA's Interim Response Letter indicated that DHA had not yet conducted a search for, or a preliminary review of, any records responsive to Riverkeeper's FOIA request. DHA's

---

[2] On a September 19, 2024, phone call from counsel for Riverkeeper to the U.S. Army FOIA Office, an Army FOIA Officer indicated that the Army Public Health Center no longer exists as such, and that the August 10, 2023 referral memorandum sent by the Fort Stewart FOIA Office intended for the Army Public Health Center was apparently sent to the Defense Health Agency.

Interim Response Letter did not invoke any statutory exemptions under FOIA for any of the records responsive to Riverkeeper's FOIA request, nor did it provide any information about the scope of the records to be produced.

46. On November 17, 2023, more than two months after DHA sent its Interim Response Letter and having received no updates since, Riverkeeper contacted the DHA FOIA Office requesting an update on its FOIA request. Three days later, the DHA FOIA Office sent an email to Riverkeeper indicating that the status of the FOIA request was "awaiting a response from the appropriate search office."

47. On May 29, 2024, more than six months later, Riverkeeper sent an email to the DHA FOIA Office noting that no further updates had been provided since November 20, 2023, and asking for an update and an expected timeline for production of documents. The DHA FOIA Office sent an email reply to Riverkeeper the same day, stating that DHA had received records from the program office and that records would undergo review according to a "first in/first out" policy. The email also stated that Riverkeeper's request was number 629 in the queue.

48. On July 3, 2024, Riverkeeper sent an email to the DHA FOIA Office requesting another status update. Riverkeeper noted that it had not yet received any substantive response nor expected timeline for production of documents. Riverkeeper also noted that there had been no request from DHA to narrow the scope of the request, nor had DHA provided any information that would enable Riverkeeper to expedite the process. Riverkeeper offered to narrow the scope of the request. The DHA FOIA Office sent an email reply stating that Riverkeeper's request was 564 in the queue, that the search response had been received by the

component area and would undergo review, and that no projected date of production was available.

49. On September 16, 2024, Riverkeeper sent an email to the DHA FOIA Office asking for yet another status update. On September 19, 2024, the DHA FOIA Office replied that Riverkeeper's request was 451 in the queue. DHA also stated that after review by the component area, the search response would also undergo final legal review.

50. On October 25, 2024, Riverkeeper emailed the DHA FOIA Office requesting a status update. Riverkeeper also alerted DHA that USAEC had pointed Riverkeeper to the July 2022 Report for Fort Stewart and that Riverkeeper had requested production of documents referenced in and underlying that report. The DHA FOIA Office did not respond. On December 17, 2024, Riverkeeper sent a follow-up email asking for any clarification on the documents under review and a status update. On December 19, 2024, the DHA FOIA Office responded apologizing for the substantial delay and indicating that Riverkeeper's request was number 367 in the queue. The DHA FOIA Office provided no further information as to the nature of the documents under review for production.

51. On September 25, 2024, Riverkeeper sent an email to USAEC requesting confirmation that the USAEC FOIA Office received the referral memorandum from Fort Stewart FOIA Office, dated August 10, 2023. Riverkeeper also asked for a case tracking number and status update. On October 7, 2024, the USAEC FOIA Office replied that the referral memorandum was not received until September 25, 2024, presumably when it was sent directly to USAEC from Riverkeeper, and that the information requested by Riverkeeper was publicly available. USAEC provided a link to the site hosting one of the two July 2022 reports referenced in paragraph 36 above, and also provided a copy of that report via DOD SAFE file

transfer. Riverkeeper's FOIA request was evidently never routed from the Fort Stewart FOIA Office to USAEC.

52. On October 7, 2024, Riverkeeper replied to the USAEC FOIA Office asking for production of the appendices to the July 2022 reports for both Fort Stewart and Hunter Army Airfield. Riverkeeper also asked for clarification as to whether the documents gathered by the Fort Stewart FOIA Office and sent to USAEC included only the publicly available July 2022 report for Fort Stewart. On October 8, 2024, the USAEC FOIA Office stated that the documents produced by the Fort Stewart FOIA Office included only the July 2022 report for Fort Stewart, and that USAEC would look into production of the appendices to the July 2022 reports and other responsive documents.

53. On October 8, 2024, the USAEC FOIA Office sent an email to Riverkeeper requesting a copy of the original FOIA request submitted by Riverkeeper to the Army FOIA Office on June 5, 2023, and stating that such request was never received by USAEC. Upon information and belief, Fort Stewart FOIA Office failed to properly route, or USAEC FOIA Office failed to properly receive Riverkeeper's re-routed FOIA request. Riverkeeper promptly replied to USAEC with an attached copy of the original June 2023 FOIA request.

54. On October 10, 2024, the USAEC FOIA Office replied with an attached letter acknowledging receipt (on September 25, 2024) of Riverkeeper's FOIA request, providing a case number, Army FOIA Office contact information, and stating that the request was placed into the complex processing queue and would be handled on a "first in, first out" basis. The letter also assigned case number FP-25-000483 to Riverkeeper's request.

55. On October 14, 2024, Riverkeeper emailed the USAEC FOIA Office requesting a status update on the request, asking for production of the appendices to the July 2022 reports,

13

and offering to narrow the scope of the request. On October 22, 2024, the USAEC FOIA Office replied that they were reviewing documents to be produced and that the request could not be processed through the "simple" queue.

56. On October 28, 2024, Riverkeeper emailed the Army FOIA Office contact information provided in USAEC's acknowledgment letter and asked for a status update. Riverkeeper received a bounce-back email indicating that the contact information provided in USAEC's letter was not functional.

57. On November 4, 2024, USAEC sent a Referral and Close Memo to Riverkeeper. That memo stated that Fort Stewart had referred the original request to USAEC because there were requested records that were not under the Fort Stewart FOIA Office's purview. The memo noted that USAEC had reviewed the request and referred it back to the Fort Stewart FOIA Office for further processing and response. The memo further stated that the request was closed with respect to further processing by USAEC.

58. On November 12, 2024, Riverkeeper sent an email to the Fort Stewart FOIA Office attaching the Referral and Close Memo from USAEC and Riverkeeper's original June 2023 FOIA Request. Riverkeeper inquired as the status of the re-referred request.

59. On November 13, 2024, the Fort Stewart FOIA Office sent a letter to Riverkeeper stating that the referral of Riverkeeper's FOIA request from USAEC to Fort Stewart constituted a new FOIA request, and assigned a new tracking number FP-25-002743 / FA-25-0002. The letter stated that Riverkeeper's request did not fully comply with mandatory requirements for a FOIA request laid out in Army Regulation 25-55, specifically, that the request did not include an indication of willingness to pay fees for processing.

60. On November 13, 2024, Riverkeeper replied to the Fort Stewart FOIA Office noting that Riverkeeper's FOIA request was originally submitted to and received by DOD in June 2023 before being referred and re-routed several times to and from Fort Stewart, USAEC, and DHA. Riverkeeper noted that the original request was perfected, including an indication of willingness to pay fees. Riverkeeper pointed out that the original request specifically asked for documents related to testing for PFAS at Fort Stewart and Hunter Army Airfield and that the appendices to the July 2022 Reports appear to contain PFAS testing records from those facilities, among other relevant documents. Riverkeeper also noted that DHA's Interim Response Letter had already granted a waiver of processing fees in response to Riverkeeper's FOIA request.

61. On December 17, 2024, having not received any response from the Fort Stewart FOIA Office, Riverkeeper sent a follow-up email asking for a response to Riverkeeper's concerns about the re-referred request and seeking a status update. On December 18, 2024, the Fort Stewart FOIA Office replied that they had coordinated with their legal office and were awaiting a response, but providing no further details or information.

62. It appears that Riverkeeper's FOIA request is now closed for processing by USAEC FOIA Office and has been re-referred back to the Fort Stewart FOIA Office.

63. The Fort Stewart FOIA Office has asserted that USAEC's referral of Riverkeeper's request back to Fort Stewart constitutes a new and imperfect FOIA request by Riverkeeper. The Fort Stewart FOIA Office holds this position even though Riverkeeper's original June 2023 request clearly targets PFAS testing records and asked for and was granted a processing fee waiver by DHA.

64.     On January 15, 2025, the Fort Stewart FOIA Office replied to Riverkeeper's request for clarification by appearing to indicate that "Review' fees" do not apply to Riverkeeper's request. It was not clear whether this constituted the granting of a fee waiver. The Fort Stewart FOIA Office did not clarify whether it considered Riverkeeper's request as perfected when received, but did state that other DOD agency fee determinations do not bind Army fee waiver determinations. The email also stated that "statutory time limits cannot be met" because of the need to review more than 20,000 records. The Fort Stewart FOIA Office offered no further details on the scope of the records requiring review, but offered Riverkeeper the option to narrow the scope of the request to "a more manageable number of pages."

65.     Even if the re-referral of Riverkeeper's request from USAEC back to Fort Stewart constituted the submission of a new request, the statutory timeline for providing a response determination, including a ten-day extension for unusual circumstances (which DOD has not even invoked), has once again elapsed.

66.     It has now been nearly one and a half years since Riverkeeper submitted its FOIA request for documents related to PFAS testing and contamination at Fort Stewart and Hunter Army Airfield.

### Riverkeeper's Constructive Exhaustion of Administrative Remedies

67.     Riverkeeper has constructively exhausted its administrative remedies because DOD has failed to make a "determination" on its FOIA request within the statutory time period of 20 working days. 5 U.S.C. § 552(a)(6)(A), (C).

68.     Riverkeeper has made persistent, repeated, wide-ranging efforts to follow-up, clarify, and provide additional information to assist DOD in the processing of its FOIA request.

69. DOD has not communicated the scope of the records it intends to produce in response to Riverkeeper's FOIA request.

70. DOD has not invoked a FOIA exemption for any of the records responsive to Riverkeeper's FOIA request.

71. DOD has not provided a schedule of production for the records responsive to Riverkeeper's FOIA request.

72. DOD has not released any records responsive to Riverkeeper's FOIA request, with the exception of one report that was already publicly available.

73. DOD has not notified Riverkeeper of the right to appeal an adverse determination on its FOIA request within the agency.

74. DOD's internal referrals, interim response letters, and placement of Riverkeeper's FOIA request into the "complex queue" does not constitute an adequate "determination" under FOIA.

75. DOD has failed to timely and accurately refer and route Riverkeeper's FOIA request to the appropriate component offices.

76. DOD has not gathered nor reviewed responsive documents, nor determined and communicated the scope of the documents it intends to produce and withhold and the reasons for withholding any documents, nor informed Riverkeeper that it can appeal whatever portion of the decision is adverse.

77. DOD has not invoked a response deadline extension of 10 working days due to unusual circumstances.

78. DOD is thereby precluded from relying on the administrative exhaustion requirement to keep this matter out of court.

**CLAIM FOR RELIEF**

**COUNT ONE: Improper Withholding of Records
Responsive to Riverkeeper's FOIA Request**

79. Riverkeeper incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

80. More than 20 working days have passed since the submission of Riverkeeper's FOIA request.

81. DOD has not provided a notification or explanation required to extend the deadline for a determination by 10 working days as required under 5 U.S.C. § 552(a)(6)(B) and 32 C.F.R. § 286.8(c). Even if DOD had provided a satisfactory explanation and notification, the 10-working day period for an extension has also elapsed.

82. DOD has violated FOIA by failing to make a "determination" on Riverkeeper's FOIA request as required by 5 U.S.C. § 552(a)(6)(A).

83. DOD has violated FOIA by failing to conduct a reasonable search for records responsive to Riverkeeper's FOIA request as required by 5 U.S.C. § 552(a)(3)(C).

84. DOD has violated FOIA by failing to provide Riverkeeper with all non-exempt records responsive to Riverkeeper's FOIA request.

85. DOD has violated its own FOIA regulations by failing to route Riverkeeper's request to the appropriate DOD component office as required by 32 C.F.R. § 286.8(c).

86. By failing to make a "determination," conduct a reasonable search for records, and provide Riverkeeper with all non-exempt records responsive to its FOIA request, DOD has denied Riverkeeper's right to information as provided under FOIA.

87. Unless it is enjoined by this Court, DOD will continue to violate Riverkeeper's legal right to be timely provided with the records Riverkeeper asked for in its FOIA request.

88. Riverkeeper is directly and adversely affected and aggrieved by DOD's failure to provide responsive records to its FOIA request, as described above.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff Ogeechee Riverkeeper respectfully requests that this Court:

A. DECLARE that DOD has violated and is continuing to violate FOIA by failing to make a timely "determination" on Riverkeeper's request;

B. DECLARE that DOD has violated and is continuing to violate FOIA by failing to conduct an adequate search for records in response to Riverkeeper's request;

C. DECLARE that DOD has violated and is continuing to violate FOIA by failing to provide Riverkeeper with all non-exempt documents responsive to Riverkeeper's request;

D. ORDER DOD to search for and provide all non-exempt, responsive documents to Riverkeeper without further delay;

E. ORDER DOD to produce an index identifying any documents or parts thereof that it intends to withhold and the basis for the withholdings pursuant to 5 U.S.C. § 552(a)(8) and (b), in the event DOD determines certain responsive records are exempt from disclosure;

F. RETAIN jurisdiction over this matter to rule, if necessary, on the adequacy of DOD's search for responsive documents or on assertions by the agency that any responsive documents are exempt from disclosure;

G. AWARD Riverkeeper its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(5)(E);

H. GRANT Riverkeeper any other relief the Court deems just and proper.

Respectfully submitted this 27th day of January, 2025.

                                                                      */s/* Megan Huynh  
                                                                      Megan Huynh,  
                                                                      Senior Attorney  
                                                                      D.D.C. Bar No. GA0039

Peter Slag,  
Associate Attorney  
    *[Attorney D.D.C. bar admission application was submitted January 2, 2025, and is pending.]*  
Southern Environmental Law Center  
Ten 10th Street NW, Suite 1050  
Atlanta, GA 30309  
Telephone: (404) 521-9900  
mhuynh@selcga.org  
pslag@selcga.org

*Counsel for Plaintiff*